[Civ. No. 4138. First Appellate District, Division One.—February 20, 1922.]

UVADA CONSOLIDATED MINES COMPANY (a Corporation), Appellant, v. WESTERN GAS ENGINE CORPORATION (a Corporation), et al., Respondents.

[1] Sales—Action for Damages—Abandonment of Contract—Evidence—Finding.—In this action for damages for the breach of a contract for the sale of a certain engine and equipment, the facts and circumstances of the case showed that the contract had been abandoned by both parties, as found by the court.

APPEAL from a judgment of the Superior Court of Los Angeles County. Dana R. Weller, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chas. R. McCarty and Wm. C. Jensen for Appellant.

F. D. R. Moote, Moote & Patterson and Harold I. Cruzan for Respondents.

KERRIGAN, J.—This is an appeal by plaintiff from a judgment in favor of defendants in an action for damages for the breach of a contract for the sale of personal property.

In the month of November, 1916, the plaintiff, through its then president, C. H. Putnam, entered into a contract with the defendants for the purchase of a certain four-cylinder engine, with equipment, for the sum of $4,000, one-third of which was paid upon the execution of the contract, the balance to become due upon presentation of shipping documents. Under the terms of the contract the plaintiff was to furnish the defendants with information as to the size of the pulleys required for the proper operation of the engine, and the size of the crank-shaft necessary to properly operate the pulley. The purchaser was also, quoting the language of the instrument, "to furnish cement and you are to build foundations at place and in position designated by you, according to plans furnished by us. You are to furnish sand, gravel, rock, water and all other foundation material; you are to do all teaming and haul all supplies to site of installation. You are to furnish all neces-

sary help; you are to pay all freight and transportation charges from factory."

At the time of the execution of this agreement C. H. Putnam produced a telegraphic money order for $1,600, made out to his order and which had been wired to him by the plaintiff. He delivered this order to the defendants, out of which they took the sum of $1,333.33, the amount of said initial payment, and gave to Putnam a check for $266.67.

In the month of December, 1916, W. D. Lea, the sales manager of the defendants, requested Putnam to furnish the details required by the contract so that the crank-shaft and pulley might be ordered and the engine prepared for shipment, pointing out to Putnam that the contract provided a specific date of shipment. In reply Putnam informed Lea that his company was not prepared to proceed with the financial requirements of the contract, and that he would release the defendants from the delivery date in the contract. Accordingly, upon request he wrote a letter to the defendants, part of which was as follows: "Owing to the necessity of rearranging our plans of installation you will kindly hold the matter in abeyance pending the time we can give you further instructions." Thereafter Putnam repeatedly spoke to Lea in regard to a return of the deposit, saying that the company "needed the money." On January 19, 1917, the plaintiff sent a telegram to the defendants, signed by three of its officers, requesting a withdrawal of $1,000 of the first payment for temporary use because "funds are low at present and we need the money." To these requests the defendants refused to accede, but later Putnam called upon them, and as the result of a personal interview secured from Lea a check for $1,200. At that time, it seems, there was some trouble among the stockholders and directors of the plaintiff; in any event Putnam represented that he was unable to procure a properly authorized note at that time, but would do so later if the defendants would take his personal note in the meantime. Thereupon the defendants wrote and delivered to Putnam a letter to the effect that the payment of $1,200 was a refund of the first payment on said engine less approximately ten per cent; and after stating that if the maker at the due date of the note should

not desire to pay the same the note will be renewed, sets forth that the arrangement between the parties is for the purpose of allowing the maker of the note and contract to "straighten out certain financial matters." The sum thus returned was kept by Putnam and not turned over to the plaintiff. Nothing further was done in relation to the matter until March 1st following, when H. T. Johnson—who in the meantime had become the manager of the plaintiff corporation—called with an attorney and stockholder to inquire about the status of the contract. Lea told them what had been done in regard to it, and they stated to him that the plaintiff stood upon the contract and expected the defendants to perform their part of it provided the former were able to obtain control of the plaintiff and could raise the money to go ahead with the work, and Johnson also criticised Putnam for having purchased the engine, the plaintiff having no use for it as far as Johnson could see. There were, it appears, two other conversations between Johnson for the plaintiff, and a representative of the defendants, with reference to the contract for the engine, one in June and the other in September of the year 1918, but no offer of performance was made by Johnson nor did he demand delivery of the engine. It appears further that in the last-mentioned month Charles R. McCarty, an attorney representing plaintiff, called on the defendants, and was told by one of their officers that he knew nothing about the transaction, but upon looking over the papers and correspondence in reference to the matter and making inquiries about it found that the contract had been marked "canceled" in June, 1917, and refused to proceed with it. In the meantime, as a result of the World War, the price of engines of the sort in question had nearly doubled.

[1] The court, among other facts, found that the defendants still retain the sum of $133.33 paid by plaintiff on account of the purchase price of the engine; that plaintiff at no time informed defendants, as required by the terms of the contract, of the size of said crank-shaft; that the plaintiff never gave to defendants instructions for the delivery of the engine; that prior to March, 1918, the contract was abandoned by both parties; that the market value of the engine at the time of the trial was $7,000. As a conclusion of law the court found that the plaintiff was entitled to re-

cover from the defendants the sum of $133.33, and rendered judgment accordingly.

It is conceded that plaintiff made no offer of performance of the conditions of the contract by it to be performed, taking the position that no such offer was necessary for the reason that the defendants had refused to perform their part of the contract.

If it appeared here that the plaintiff in good faith intended or desired to accept the engine and was in a position financially to do so, then the conduct of the defendants might be regarded. as a sufficient ground for the refusal of the plaintiff to perform its part of the contract; but here Putnam, its president, had been criticised by those who later assumed the conduct of the transaction for having contracted to purchase the engine, Johnson asserting that the plaintiff had no use for it. An attorney for the plaintiff called upon the defendant, not to demand delivery of the engine, but to learn, as he said, the status of the contract and what the defendants were going to do about it. It is also a fair inference from the record that the plaintiff was not in a position to pay for the engine. It doubtless appeared to the court that the price of engines of this sort having advanced, the plaintiff desired to profit by this circumstance without carrying out its part of the contract; and that its claim that the defendants had repudiated the contract was an afterthought availed of to enable the plaintiff to maintain this action without offering to perform. The finding of the court on this subject is amply sustained by the evidence. It is also manifest from the facts and circumstances of the case that the contract had been, as found by the court, abandoned by both parties.

Judgment affirmed.

Tyler, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 20, 1922.

All the Justices concurred, except Wilbur, J., who dissented.

Waste, J., was absent and Richards, J., *pro tem.*, was not acting.